## FLADELAND v. UNITED STATES.
### No. 6435.

Circuit Court of Appeals, Ninth Circuit.
Oct. 19, 1931.

Graham K. Betts, of Seattle, Wash., for appellant.

Anthony Savage, U. S. Atty., and Tom De Wolfe, Asst. U. S. Atty., and Lester E. Pope, Ins. Atty., United States Veterans' Bureau, all of Seattle, Wash.

Before WILBUR and SAWTELLE, Circuit Judges and WEBSTER, District Judge.

WILBUR, Circuit Judge.

This is an appeal from a judgment of dismissal in an action on a war risk insurance policy, after nonsuit made and entered December 17, 1930. A formal judgment of dismissal was entered March 9, 1931, and the petition for appeal allowance and notice thereof were all dated March 10, 1931. The appellee moves to dismiss the appeal on the ground that it is taken from the order of nonsuit of December 17, 1930, whereas no final judgment was rendered until March 9, 1931. Inasmuch as the appeal is taken in time in either event, and purports to be from the judgment of dismissal, a mistake in the date of the judgment would be of little significance. The case came on for trial December 17, 1930. A motion for a nonsuit was made by the government at the close of plaintiff's case, and it was granted as to $7,000 term insurance and denied as to $3,000. The reason for this form of the order was that the court concluded that, while there was not sufficient evidence of total and permanent disability within the life of the $10,000 war risk insurance policy sued upon by the plaintiff and appellant, there was sufficient evidence to go to the jury of such disability within the life of the $3,000 substituted policy which did not lapse until 1929. The order of December 17, 1930, granting the nonsuit directs that "pleadings are to be amended and to proceed on the $3,000 converted insurance." The trial apparently continued on this basis without formal pleadings for the balance of the day when it was continued until December 30, 1930. The next day, December 18, however, the attorneys appeared in open court, and an order was entered in the minutes of the court to the effect that "it is ordered that the above entitled cause be dismissed and the jury is discharged from the case. A nonsuit is granted as to the $7,000 term insurance policy and an order is to be prepared."

We do not pause to consider the question as to whether either of the orders of December 17th or December 18th was a final order of dismissal, for it is clear that the appellant appeals from the dismissal of the case, and such an order was made on December 17, on December 18, and, no doubt out of an abundance of precaution, again on March 9, 1931. The motion to dismiss is denied.

Upon the merits, the sole question necessary to be considered is as to whether or not the evidence of total and permanent disability within the life of the policy was sufficient to go to the jury.

Plaintiff claims that during his service in the army and before his war risk insurance policy lapsed he suffered from an attack of spinal meningitis from which he never fully recovered, and that due to the ravages of the disease he is now totally disabled, and will be so permanently. There was ample evidence that at the time of the trial the plaintiff was permanently and totally disabled. There was medical testimony to the effect that, if he suffered an attack of spinal meningitis during the life of the policy and manifested the symptoms to which he testified during the interim before the trial, although he could and did work, he should not have done so, because of the present and ultimate effect upon his health. In short, this testimony, if believed, would lead to the conclusion that he never was able to follow continuously a gainful occupation after his discharge, although he may in fact have done so.

If it can be said with reasonable certainty

that during the life of the policy the condition of the soldier was such that he was not able to work and that condition was continuous thereafter, the fact that he did in fact work would not deprive him of the remedy the government has provided for his disability. The appellant testified that he suffered from various diseases, during his enlistment, among them a disease first diagnosed as infantile paralysis; later as spinal meningitis; and still later as cerebro spinal meningitis. The plaintiff testified, in part, as follows:

"I asked to be discharged [May, 1919] because I was too nervous, and in the hospital the condition of other sick patients aggravated my nervousness. I didn't have any other illnesses while in the service, except the measles, spinal meningitis, and a severe cold while I had the measles. I was continuously coughing all the time while I was in France, and after I was discharged I was spitting blood. * * *

"During the time I was in eastern Washington [1919], my condition became aggravated. When I attempted to work, I was coughing and spitting blood. By aggravated I mean I felt tired all the time; I felt I was barely able to get along."

Referring to his condition in 1922, he said: "After I worked I was extremely tired, and I suffered from numbness in my arms and my left leg would have a tendency to go to sleep. I was tired and it took me a long time to recuperate, depending on how long I worked, the longer I worked the slower I would recuperate."

He testified as to his condition when working at the United States Navy Yard as follows: "I was on duty, but I was not occupied all the time. My physical condition at that time was becoming aggravated, and I had again developed a very bad cough which I could not get rid of, and I was getting weaker and more nervous, and my spine was getting to be extremely sore. My spinal nerves and brain were extremely sensitive. I found it was impossible for me to continue in the navy yard, and I thought I would go back to the ranch and try the second time to make a living with chickens."

He testified that he suffered from tremor and numbness in his arms, demonstrated to the jury his tremulousness, and said: "My condition is practically the same now as when I got out of the Army."

Dr. Eikenbary testified: "The history of spinal meningitis would readily account for his condition. The findings in 1929 were the same. From my own examination, my opinion is he is not able to follow any—he may be able to follow a gainful occupation, but there are some trivial things he might do, but as far as getting out and earning a real living, I should say no. * * * The condition which I found is permanent."

His neighbor testified as to his condition when he came back from the Army as follows: "I saw him when he first came back from the army. At that time he looked haggard. His hands trembled; his voice trembled; he had a cough, and was thin. He worked for me before he went in the service. Since service he has fed the chickens after I went to town, never hard work. He never sought employment from me because he knew he could not do it. I have seen him often, since that time. I still live across from him. He has done nothing but a little work around his own place."

A navy yard worker, J. Hall, to whom the plaintiff was assigned as a helper, testified:

"As my helper he was required to get material from the stores and carry it to me. He was supposed to have pipe-fitting work, but I done it myself. Sometimes it takes both of us on bigger work, each one of us on a wrench, something like that. He very seldom did that work. He tried to help me do some of it. When he tried to help me, he was nervous, he was in no condition and seemed to be very weak, and if he would try—

"Mr. De Wolfe (interrupting). I object to that as calling for a conclusion. .

"The Court. Yes.

"When he was working for me, he was very nervous, weak, and seemed to be in a bad physical condition."

Dr. Earl F. Ristine testified as to a physical examination of the plaintiff in November, 1928, and December, 1930, and said: "My diagnosis was positive, infectious encephalitis. The findings in December, 1930, were the same except he has developed pulmonary tuberculosis. I would say that he has been totally disabled from my examination in 1928. I know nothing of him preceding that time. From my examination of 1930 I am of the same opinion. It would be impossible in this case—many cases similar to Fladeland's run 5, 6, 7 years before they become totally disabled, and there is a difference in different people, the resistance they have towards infectious diseases—not having seen him before, it must have been preceding that time, but it is only guessing. I would say that his infection started in 1918 without a question, but when the disability started it

would be impossible to say, because there is a difference in the transmission of time with different individuals. The condition as it now is is permanent."

Dr. Wilson's testimony is definitely to the effect that the plaintiff was totally and permanently disabled as early as 1924, as ascertained by his examination at that time, that he continued thereafter to be so disabled, and was thus incapacitated for work at the time of the trial. He also expressed the definite opinion that he had been so disabled from the time he had meningitis, which was admittedly while his $10,000 policy was in force. The plaintiff, after his examination by Dr. Wilson in 1924 worked at the navy yard from November 9, 1925, to January, 1927, off and on. He testified, however, that he was never able to do the work really belonging to his job, and in this he is corroborated by those for whom he worked.

There was sufficient evidence of total and permanent disability during the life of the war risk insurance policy for the consideration of the jury.

Some point is made by the government to the effect that the plaintiff voluntarily dismissed his action as to the $3,000 not covered by the order of nonsuit, and that the dismissal of the action by the court was predicated in part upon this voluntary act. The intention of the court in the first instance was to grant a nonsuit as to the plaintiff's entire cause of action upon the $10,000 policy, but also to permit him to amend his complaint to set up the subsequent policy of $3,000 and to submit the new issues to the jury upon the evidence already adduced, and such other evidence the parties might offer. The government objected to this course, and objected to going on with the trial without formal pleadings, and announced that it was not prepared to try the new issues without further examination of the facts. These objections resulted in a continuance, and plaintiff's action was entirely in accord with the previous action of the court.

The judgment is reversed.