## UNITED STATES v. SEATTLE TITLE TRUST CO.
### No. 6490.

Circuit Court of Appeals, Ninth Circuit.

Nov. 9, 1931.

Anthony Savage, U. S. Atty., and Cameron Sherwood, Asst. U. S. Att'., both of

Seattle, Wash., William Wolff Smith, Sp. Counsel, and Bayless L. Guffy, Atty. Veterans' Administration, both of Washington, D. C., and Lester E. Pope, Atty. Veterans' Administration, of Seattle, Wash.

Lee L. Newman and Wettrick, Wettrick & Flood, all of Seattle, Wash., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and WEBSTER, District Judge.

WILBUR, Circuit Judge.

This is an appeal from a judgment against the government on a war risk insurance policy for $10,000 predicated upon the allegation and proof that the appellee (insured) became totally and permanently disabled during the life of the policy which lapsed at midnight on February 28, 1919, for nonpayment of premium on February 1, 1919. At the time of the trial of this action in March, 1931, the insured was in an insane asylum suffering from paresis resulting from syphilis. He acquired the disease during the term of his service in the Army and while the policy was in effect. It is claimed that as a result of this disease he then became and ever since has remained totally and permanently disabled. During the interval between his discharge and the trial of the case, he had frequently and for long periods of time engaged in gainful occupation, and had received in the aggregate a large amount of compensation for such labor. During this interval he manifested some eccentricities which increased as the years went on. The appellee was examined by Dr. E. A. Nicholson on August 20, 1925, and again on April 8, 1926, and December 12, 1929. Dr. Nicholson testified that in his opinion the insured was not fit to work at the time of his first examination.

After his discharge, the insured went to California, where he worked a couple of weeks loading cars. Upon his return to Seattle, he started to work for the Seattle Municipal Railway, and continued in that employment from July, 1919, to June, 1920, receiving twenty-three semimonthly pay warrants which amounted in the aggregate to $1,310.52. After leaving the employ of the Municipal Railway, the insured worked for about two months in a garage. He operated the Mission Theater in Seattle from the latter part of 1920 to the middle of 1924, and then, after going to California for a short time, went to Ruston, near Tacoma, where he operated a theater from March until June of 1925. He was sent to the hospital in the

fall of 1925. The record shows that the insured worked from September 12, 1928, to October 24, 1928, for the A. V. Love Dry Goods Company as a fireman, and also for the Seattle Office Equipment Company as a janitor from April 5, 1929, to January 5, 1930, receiving as compensation for such work $22.50 per week. Witnesses who came in contact with him while he was working testified that his work was satisfactory. It is manifest from the nature and course of his disease that his mental difficulties would and did increase. The general statements of witnesses concerning his symptoms must be weighed with reference thereto. The fact is that he did engage in gainful occupations continuously and for pay for long periods of time. There is no medical testimony to the effect that the work or labor would aggravate his condition. On the contrary, the evidence tended to show that it probably was the best thing for him to have his mind occupied; whereas, in the case of tuberculosis it is clearly established that, although a man sick of that disease may be physically able to perform labor and may do so for a considerable period and earn a competence thereby, such labor may be at the peril of his health, as rest is one of the necessary methods of treatment. United States v. Sligh, 31 F.(2d) 735 (C. C. A. 9); United States v. Meserve, 44 F.(2d) 549 (C. C. A. 9); Carter v. United States, 49 F.(2d) 221 (C. C. A. 4); Fladeland v. United States, 53 F.(2d) 17, decided by this court October 19, 1931. The same rule also applies in cases of cerebral spinal meningitis; but in cases of syphilis the physical and mental impairment is due to actual physical changes in the body and the degree of impairment is measured thereby. Dr. Nicholson testified on behalf of the plaintiff, giving the general characteristics of syphilis and a diagnosis of the case of the appellee, and indicated the course of the disease. He stated:

"I felt at the time I first examined him that he was not fit to take up any work, as he could not be depended upon. General paresis of the insane is a permanent disability—a progressive disease. Yet, we do find in most general paralytics there will be a period where the patient is decidedly better, and in that period patients have returned to their former occupations, or to other work, but only for a short length of time in the majority of cases. There are some cases that probably go two or three years. There are exceptions reported going four, six and ten years in one of these periods of remissions which they have. I have only informa-

tion on three different occasions, the last one in December, 1929. At that time he was decidedly better than he was prior to this time, but from my experience I would expect him to follow the other cases and have a recurrence. I think it was only a remission and temporary.

"I never saw him to my knowledge until August, 1925. These three stages of syphilis, primary, secondary and tertiary syphilis, are stages of the disease itself and may or may not have any connection with the brain or the nervous system. A person may have syphilis for twenty years and never show any brain involvement; and up to the time you find a brain involvement syphilis constitutes little or no disability. Any other stage of syphilis would not disable a person from carrying on in any substantial occupation. A man may have syphilis involving the heart or blood vessels and never have anything the matter with his brain. But outside of conditions like that a man may have syphilis and never know he has it and never be disabled from going on with his work. * * *

"A man may have neuro-syphilis without general paralysis of the insane, or syphilis that might paralyze the eye muscles or the muscle of an arm or leg, and he might not have cerebro-syphilis, and he might have both or any combination."

It appears from this testimony that syphilis, even when it results in general paralysis, does not necessarily result in permanent and total disability from the time of infection, and this is a matter of common knowledge, of which we will take judicial notice. The evidence in regard to the actual employment of the appellee would indicate that in his case he was able to work continuously for long periods of time at a gainful occupation. During this period, as the evidence indicates, his nervous system gradually gave way, until he became permanently and totally disabled. In this case the fact is that he did work, and there is no testimony to justify the conclusion that he was not able to work; that is, that he was not able to do what he did in fact do.

The wife of the insured was one of the principal witnesses in behalf of the appellee. They were married in 1918. Her testimony was rather inconclusive. It consists largely of general statements as to the nervousness, irritability, and various idiosyncrasies and eccentricities of the insured. The jury were no doubt justified, from her evidence and from the expert testimony in concluding that these symptoms were manifesta-

tions of the progress of the disease from which he had suffered and from which he never fully recovered. In view of the fact that during most of this period the insured was actually engaged in working continuously at a gainful employment, the fact that his health was impaired does not indicate his total inability to perform such labor. United States v. Barker, 36 F.(2d) 556 (C. C. A. 9); United States v. Rice, 47 F.(2d) 749 (C. C. A. 9). In the case at bar, the evidence was insufficient to justify the verdict of the jury that appellee was totally and permanently disabled on or before February 28, 1919, and in so holding we again call attention to the distinction between a case involving syphilis, such as the case at bar, where ordinary physical work not involving mental strain is rather beneficial than otherwise to the person having such a disease, and one in which the insured is suffering from a disease such as active tuberculosis, and wherein it is shown, although work is actually done, that it should not have been done by reason of the effect upon the health of the person so afflicted.

It is suggested by the government's counsel that the nature of the disease with which the insured was afflicted indicates misconduct on his part, and that therefore the usual rules with reference to a liberal construction of the policy in his behalf do not apply. We mention this fact merely for the purpose of saying that we believe this position is untenable.

Judgment reversed.