## EGGEN v. UNITED STATES.
### No. 9343.

Circuit Court of Appeals, Eighth Circuit.
April 30, 1932.

James H. Hall, of Marshall, Minn., and A. R. English, of Tracy, Minn. (Hall & Catlin, of Marshall, Minn., on the brief), for appellant.

Joseph W. Finley, Asst. U. S. Atty., of St. Paul, Minn. (Lewis L. Drill, U. S. Atty., of St. Paul, Minn., and John H. Fraine, Insurance Atty., Veterans' Administration, and R. M. Uehren, Asst. Regional Atty., U. S. Veterans' Administration, both of Minneapolis, Minn., on the brief), for the United States.

Before VAN VALKENBURGH and SANBORN, Circuit Judges, and DAVIS, District Judge.

SANBORN, Circuit Judge.

This is an appeal from a judgment in favor of the Government in a war risk insurance case. Emil Eggen was the insured. He was in the army from May 19, 1917, to August 24, 1919, saw active service, but received no wounds. His enlistment record shows his condition to have been good at the time of his discharge. His own declaration, the certificate of his commanding officer and that of the medical officer who examined him are to the effect that he then had no disease or disability. He paid no premiums upon his policy after his separation from the service, and, by its terms, the policy lapsed for nonpayment of premiums on October 1, 1919. The insured died March 6, 1926, at the Veterans' Hospital at Ft. Snelling, Minn., from tuberculosis. The appellant is his mother, the beneficiary named in the policy and the special administratrix of his estate. She made a claim under the policy, which was rejected, and she then brought this suit against the

government, claiming that her son was, prior to October 1, 1919, a totally and permanently disabled man, and that the policy had therefore matured. This the government denied.

Upon the trial of the case before a jury, at the close of the evidence, the government moved for a directed verdict on the ground of the insufficiency of the appellant's evidence. The motion was granted, and this appeal followed.

It is not necessary to set forth the evidence in detail. There was testimony that the insured was examined by a physician in September of 1919, and that he then had symptoms indicating incipient pulmonary tuberculosis; that he was advised to go to a sanitarium or to the Veterans' Hospital in order that he might be cured; that he did not go to the hospital or take any treatment, but worked intermittently on a farm, in the woods, for a wrecking company in Minneapolis, and as a section hand, the periods during which he was employed being short and the total employment aggregating about fifteen months. The testimony of the appellant's lay witnesses tended to show that, upon the insured's return from the army on August 25, 1919, he was thin, pale, and ill, that he coughed and threw up, was short-winded, tired easily, had night sweats, and was unable to work regularly or effectively, and that these conditions continued. He was examined by a doctor in 1925, and was found at that time to have tuberculosis in an advanced stage. He was sent to the Veterans' Hospital on February 19, 1926, and died on March 6, 1926.

▋ A policy of war risk insurance was a contract of insurance between the government and the insured. It was not a gratuity nor an arrangement for a pension. The contingencies insured against were death and total permanent disability. If a policy lapsed, for nonpayment of premiums, before death or total permanent disability occurred, there could be no recovery under the policy. If either of the contingencies insured against occurred during the life of the policy, there could be a recovery.

▋ Total disability is any impairment of mind or body which renders it impossible for the insured to engage continuously in any substantially gainful occupation, and total disability is permanent if it is founded upon conditions which make it reasonably certain that it will continue throughout life. A total disability which has not become permanent before the lapse of a policy does not mature it, nor does a permanent disability which has not become total. Some of the recent cases in which these policies and their terms are discussed are Blair v. United States (C. C. A. 8) 47 F.(2d) 109; McNally v. United States (C. C. A. 8) 52 F.(2d) 440; United States v. Le Due (C. C. A. 8) 48 F.(2d) 789; United States v. Perry (C. C. A. 8) 55 F.(2d) 819; United States v. McGill (C. C. A. 8) 56 F.(2d) 522; United States v. McLaughlin (C. C. A. 8) 53 F.(2d) 450; Green v. United States (C. C. A. 8) 57 F.(2d) 9; Nicolay v. United States (C. C. A. 10) 51 F.(2d) 170; Hirt v. United States (C. C. A. 10) 56 F.(2d) 80; United States v. Hairston (C. C. A. 8) 55 F.(2d) 825.

The decisions are all to the effect that, in order to recover upon a policy of war risk insurance, the plaintiff must sustain the burden of proving that the insured was both totally and permanently disabled prior to the lapse of the policy. There has been no substantial difference of opinion as to the law governing these policies, but there has not been entire uniformity in the decisions with reference to the nature of the evidence which will make a prima facie case of total and permanent disability. Because of this, it has been difficult for the trial courts to pass upon the question of the sufficiency of the evidence with any assurance of the correctness of their conclusions. The results of the appeals in such cases in this court are evidence of that situation.

In most cases the insureds lapsed their policies when they left the service in 1919. They did not consider themselves then totally and permanently disabled. If they had, they would have made claims under their policies, and, if there had been any substantial doubt in their minds as to whether they were not so disabled, they would have paid premiums in order to avoid any controversy over their right to collect upon the policies. There were, however, unquestionably, men discharged from the army who had disabilities which were total and permanent, but which were not recognized as such by them or by the government at the time. It is perhaps safe to say, however, that it is not usual for a person to become totally and permanently disabled, even under a liberal construction of those terms, without soon having some intimation of the fact. To satisfactorily prove or disprove that the conditions upon which any claimed total disability was founded twelve or thirteen years ago were such as to render it reasonably certain that at that time the disability would continue throughout life, presents some difficulties. The long delays in

bringing suit and the unsatisfactory character of the evidence in many of these cases has added to the difficulties of the courts in passing upon the merits of these claims.

The situation illustrated by this case is frequently presented. There is often evidence sufficient to justify a finding that the insured, while his policy was in force, was totally disabled as the result of some disease which is, as a matter of common knowledge, in the great majority of cases curable. Such a disability would be classed as total and temporary during the life of the policy. Years after the lapse of the policy, the insured dies or his total disability becomes a permanent one from a continuation of the same disease. The subsequent death or subsequent permanence of the disability does not always create an inference that the disability was permanent before the lapse of the policy. If it did, then whenever in one of these cases there was evidence of total disability from a certain disease before lapse, and death or total and permanent disability from a continuation of the same disease after lapse, the case would be for the jury, regardless of what the disease may have been. If, at the time of the lapse of the policy, all the conditions upon which the total disability was founded then failed to make it reasonably certain that the disability would continue throughout the lifetime of the insured, the policy did not mature. If it did not mature, it lapsed, and, if subsequently and as the disease progressed, other conditions arose which made it reasonably certain that the insured could never recover, those later conditions cannot be used to mature a policy which had ceased to exist. A man with influenza, mumps, measles, whooping cough, or scarlet fever may be a totally disabled man (and a certain percentage of deaths result from those diseases), but no one could properly contend that an insured under a policy of war risk insurance so totally disabled had a matured policy on the day the disability occurred, if he thereafter died or the disability subsequently became permanent as a result of the disease or as the result of his own failure to take treatment, or the combined result of both. Two such insureds with exactly the same disability, founded upon exactly the same conditions, could not acquire different rights under policies exactly alike, because of what occurred after lapse, so that, if one was cured, he would have no insurance, whereas, if the other died or became permanently disabled, he would have a matured claim as of the date when his policy lapsed. This is not saying that if an insured had a total disability resulting from a disease which was during the life of the policy believed to be curable, but which was, in fact, at that time incurable, he might not show that what was believed to be a total and temporary disability was in fact, because of conditions which were not recognized, a total and permanent one. If an insured during the life of his policy was totally disabled because of severe headaches, the cause of his disability being unknown or improperly diagnosed, and if conditions subsequent to lapse demonstrated that this disability, which was regarded as temporary prior to lapse, was in fact then permanent because of some incurable condition, such as a brain tumor, there could be a recovery upon the contract. In the case of a total disability resulting from incipient tuberculosis before lapse, and ending in death or permanent disability after lapse, the subsequent history might disclose the existence of conditions during the life of the policy not then known or recognized, which would justify a conclusion that it had been reasonably certain while the policy was in force that the disability would continue throughout life. See United States v. Phillips (C. C. A. 8) 44 F.(2d) 689; McNally v. United States, supra.

When an insured has a total disability which, during the life of the policy, is not founded upon conditions which make it reasonably certain that it will continue throughout life, he may not lapse his policy and then, if the disease later reaches a point where the conditions are such as to make it reasonably certain that he will not recover, treat the policy as having matured as of the date of the lapse. He can only collect his insurance under such circumstances if he keeps the policy alive by the payment of premiums until his total disability becomes also a permanent disability.

If, upon a trial, all of the evidence, taking that view of it most favorable to the plaintiff, fails to disclose that the conditions which actually existed at the time the policy lapsed for the nonpayment of premiums made it then reasonably certain that the disability of the insured would continue throughout his life, a finding that he was permanently disabled, regardless of events subsequent to lapse, cannot be sustained. The subsequent events may be such in point of time or circumstance as to constitute evidence of the conditions upon which the disability existing during the life of the policy was based, but they are of no importance unless they do constitute such evidence, because they do not of

themselves condition the right of recovery under the policy, which must depend entirely upon the conditions which existed when the policy was alive.

In this case, while the question of the sufficiency of the evidence to establish total disability is not free from doubt, we think it would have justified a finding that the insured was totally disabled as a result of incipient tuberculosis at the time his policy lapsed, and that this disease did not become arrested, and later caused permanent disability and finally death. We think, however, there was no substantial evidence that the conditions which existed while the policy was alive made it reasonably certain that the total disability would last throughout the lifetime of the insured. The medical testimony of the appellant did not establish the existence of such conditions prior to October 1, 1919. The probabilities then were that the insured would recover. He was advised by his doctor, in September, 1919, to take treatment so that he might be cured. The testimony introduced by the government, and not disputed, indicated that the chances for the recovery of a man in his condition—assuming it to be as described by the appellant's evidence—prior to the lapse of the policy, were at least 8 to 2; and courts recognize the fact that tuberculosis in its incipient stage is usually not an incurable malady. See Nicolay v. United States, supra; Hirt v. United States, supra. A finding that the insured was permanently disabled on October 1, 1919, or prior thereto, would not only be without substantial support in the evidence, but would necessarily be based solely upon speculation and conjecture. No one could determine from the evidence whether there were, during the life of the policy, conditions not disclosed which then placed the insured in the class of incipient tuberculars who cannot be cured, or whether, subsequent to lapse, such conditions developed during the natural progress of the disease, or because of the failure of the insured to take treatment, or as the combined result of both the disease and such failure. The appellant calls attention to the fact that there was nothing in the contract requiring the insured to take treatment. That is true, but an insured may not convert a total temporary disability existing before lapse into a total permanent disability by neglecting his condition after lapse, and the failure to take treatment may destroy whatever probative value death or permanency of disability occurring after lapse would otherwise have.

In the case of Gunning v. Cooley, 281 U. S. 90, 94, 50 S. Ct. 231, 233, 74 L. Ed. 720, the Supreme Court said: "Where the evidence upon any issue is all on one side or so overwhelmingly on one side as to leave no room to doubt what the fact is, the court should give a peremptory instruction to the jury. People's Savings Bank v. Bates, 120 U. S. 556, 562, 7 S. Ct. 679, 30 L. Ed. 754; Southern Pacific Company v. Pool, 160 U. S. 438, 440, 16 S. Ct. 338, 40 L. Ed. 485. 'When a plaintiff produces evidence that is consistent with an hypothesis that the defendant is not negligent, and also with one that he is, his proof tends to establish neither.' Ewing v. Goode (by Taft, Circuit Judge) (C. C.) 78 F. 442, 444. See Patton v. Texas & Pacific Railway Co., 179 U. S. 658, 663, 21 S. Ct. 275, 45 L. Ed. 361; New York Central R. R. Co. v. Ambrose, 280 U. S. 486, 50 S. Ct. 198, 74 L. Ed. 562."

In Stevens v. The White City, 285 U. S. 195, 52 S. Ct. 347, 350, 76 L. Ed. ——, the court said: "The burden of proof as to respondent's negligence remained upon petitioner throughout the trial. His contentions clearly show that the evidence leaves the time, place, and cause of the injury in the realm of conjecture. The evidence is consistent with an hypothesis that the tug was not negligent and with one that it was, and therefore has no tendency to establish either. Gunning v. Cooley, 281 U. S. 90, 94, 50 S. Ct. 231, 74 L. Ed. 720, and cases cited."

In this case, the burden of proving that the disability of the insured, during the life of the policy, was both total and permanent remained upon the appellant throughout the trial. Her evidence was consistent with an hypothesis that the disability was not permanent during that time, and with one that it was permanent, and therefore had no tendency to establish either.

Our conclusion is that the court was justified in directing a verdict for the government.

After both sides had rested and the motion for a directed verdict had been made by the government, the appellant moved to reopen for the purpose of recalling the doctor who had testified as to the condition of the insured in September, 1919. No offer of proof was made, but the purpose evidently was to have him express his opinion as to the permanence of the insured's disability based on the doctor's findings and the insured's subsequent history as shown by the evidence. The court was of the opinion that the doctor's testimony would not change the situation, and denied the request. This was within the discretion of the court. Goddard v.

Crefield Mills (C. C. A. 2) 75 F. 818; Render v. Arkansas Valley Trust Co. (C. C. A. 8) 196 F. 1; Postal Telegraph-Cable Co. v. N. P. Ry. Co. (C. C. A. 9) 211 F. 824; Dietrich v. U. S. Shipping Board Emergency Fleet Corporation (C. C. A. 2) 9 F.(2d) 733; Philadelphia & Trenton R. R. Co. v. Stimpson, 14 Pet. (39 U. S.) 448, 10 L. Ed. 535; St. Paul Plow-Works v. Starling, 140 U. S. 184, 197, 11 S. Ct. 803, 35 L. Ed. 404. There is nothing to indicate that, had the doctor been permitted to testify, his testimony would have changed the result. There did not appear to be sufficient foundation for an opinion that the insured was permanently disabled in September of 1919.

The other errors assigned relate to the rulings of the court with respect to evidence of the government's witnesses. In view of the fact that the appellant's evidence was insufficient, these rulings are of no importance.

The judgment is affirmed.