## UNITED STATES v. CLAPP.

### No. 180.

Circuit Court of Appeals, Second Circuit.
March 6, 1933.

Harry B. Amey, U. S. Atty., of Burlington, Vt., and Allen Martin, Asst. U. S. Atty., of Essex Junction, Vt., C. L. Dawson and Davis G. Arnold, both of Washington, D. C., and William J. Hession, of Boston, Mass., for the United States.

Harold C. Sylvester, of St. Albans, Vt. (J. A. McNamara, of Burlington, Vt., on the brief), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

■ The action was by a discharged soldier upon a policy of war risk insurance which lapsed on May 29, 1919. The plaintiff had been a farm boy before he was drafted, helping his father, who owned the farm. During his service the army rations apparently affected his digestion; at any rate he was much troubled with disorder of his stomach before his discharge, though it does not appear that his malady was serious enough to prevent the performance of his duties as a soldier. Upon his return he found himself, however, too ill to attend to his work upon the farm; at least his testimony would have justified a jury in so finding. He said that he could not continuously work for more than a few days at a time without being overcome by digestive disorders, vomiting, nausea and the like, which compelled him to lie off until by rest he could recover. It is true that he was able to engage in sports, at times pitching for a local baseball team through a full game; but the evidence was enough to support a verdict that when the insurance expired, he was totally disabled; that is, that his condition rendered it impossible for him "to follow continuously any substantially gainful occupation." Apparently no other occupation was open to him which he could have followed more continuously than farming, and for the latter he might be regarded as unfit.

■ Thus the first condition upon which the policy depended was properly before the jury. Did the case stop there, we should not interfere. However, the policy is to pay him only if his disability is permanent at the lapse; that is, in case it is "founded upon a condition which renders it reasonably certain that it will continue throughout the life of the person suffering from it." The action was brought on December 1, 1931, twelve and a half years after the lapse; the trial was in the following March. By his own story the plaintiff's disorder had continued from the time of his discharge, and had grown, if anything, worse. He testified that he had not been able to do any more work than when he was mustered out, and that his complaint had developed into a duodenal ulcer of the stomach. He went to a doctor shortly after his return home, who treated him from time to time until the spring of 1922 without alleviating his troubles. This doctor did not however diagnose his case as duodenal ulcer, nor did he even intimate at the trial that for the three years while he treated him, he was so afflicted. He could not then or later say what was the cause of his illness; he did not venture to predict with reasonable certainty, or even as a guess, how long the malady would last. His next doctor believed that he had already developed an ulcer when he first treated him in May or June of 1922; he did not say how long he had then had it, or more than that it would not develop quickly. A third doctor observed him shortly before the trial, who said that he was then suffering from duodenal ulcer which might have existed in May, 1919, but who would not commit himself further. Thus, the only proof of permanence was that the plaintiff had been continuously disabled since his discharge, and that three years afterwards he had developed a duodenal ulcer. Unless the jury was entitled to conclude from this that on May 29, 1919, his disability was reasonably certain to last during his life, he had not made out a case.

If the trial had at once followed the lapse, the permanence of the disability could only have been determined by the best medical

prognosis possible from examination and past history. When nearly thirteen years had passed, it was proper to use the added light which they throw upon his condition in May, 1919. The issue must not, however, be confused, because meanwhile his original disability became permanent. The permanence even though in fact brought about by the original illness, might be the result of an entirely different disease. The insured might for example be prostrated at the lapse by a malaria, which nobody would say was reasonably certain to be permanent. That malaria might superinduce a new disease, which might itself be permanent. Judged by what followed, we could now see that he was to become permanently disabled. That would not serve; the result would be to allow recovery for any permanent disability which developed out of a disease existing at the lapse, though the sequence of the two could not then or at the trial be pronounced to be certain. That would clearly violate the meaning of the regulation. It is not enough that, as things took their course, the insured became permanently disabled.

■ The proper test, we think, is this. The insured can recover only by showing that at the lapse he was suffering from some ailment, of which it is possible to say with reasonable certainty that it was incurable at that time, or with equal certainty that it must lead to another and incurable ailment. The fact alone that it did culminate in such another does not make a case. This is apparently the doctrine in the Eighth Circuit. U. S. v. McLaughlin (C. C. A.) 53 F.(2d) 450; Eggen v. U. S. (C. C. A.) 58 F.(2d) 616; Proechel v. U. S. (C. C. A.) 59 F.(2d) 648. The discussion of Judge Sanborn in Eggen v. U. S., is particularly enlightening. Cf. Nicolay v. U. S., 51 F.(2d) 170, 173 (C. C. A. 10). There are indeed decisions where permanence seems to have been assumed merely from the fact that at the trial the disability had become so, but, so far as we can find, the point was not discussed. Ford v. U. S., 44 F.(2d) 754 (C. C. A. 1); U. S. v. Auer, 51 F.(2d) 921 (C. C. A. 3); Madray v. U. S., 55 F.(2d) 552 (C. C. A. 4); U. S. v. Phillips, 44 F.(2d) 689 (C. C. A. 8); Fladeland v. U. S., 53 F.(2d) 17 (C. C. A. 9); U. S. v. Golden, 34 F.(2d) 367 (C. C. A. 10). So far as these decisions may be thought to countenance an opposite view, we think that the doctrine of the Eighth Circuit is the better. U. S. v. Tyrakowski, 50 F.(2d) 766 (C. C. A. 7), seems to have been consciously to the contrary, but we cannot accept it. We hold that the only use to be made of information which becomes available be-

tween the lapse and the trial, is to discover what was the actual pathological condition of the insured at the lapse; the prognosis, once that is discovered, is to be made as of the lapse and without regard to what in fact followed.

■ In the case at bar, no doctor declared that at the end of May, 1919, the plaintiff was suffering from duodenal ulcer. Only on the hypothesis that he was, did the plaintiff argue that his indigestion was reasonably certain permanently to disable him. No doctor was found hardy enough to say that indigestion, unaccompanied by ulcer, was reasonably certain so to continue for life. Should one appear, we must await his testimony before passing upon it. The existence of a duodenal ulcer in May, 1919, was not for a jury to determine upon its own uninformed intuitions. It was a strictly medical question; without the help of those skilled in the science, the conclusions of laymen upon such an issue were without adequate basis, and necessarily mere speculation. Only those familiar with the origin and course of the malady were competent to testify, and without testimony a verdict stood unsupported.

■■ But further it did not appear, even though the plaintiff was suffering from duodenal ulcer in 1919, that this condition was, or is, reasonably certain to be permanent. The testimony of one of the plaintiff's own doctors was that the chances of a recovery were even, if the patient be properly treated for six weeks, and restricts his activities for three months afterwards. It is true that the plaintiff had been four times to hospitals provided for soldiers, once for a period of seven weeks; but it does not appear that he was then treated for duodenal ulcer. We cannot say on this record therefore that his disease has not yielded, or would not yield, to the accredited treatment, or that that treatment was not available to him. Again, the evidence was that in some cases an operation is resorted to with success; the plaintiff in 1929 refused in writing to be operated upon, and this he may not be allowed to disclaim. Unless it was reasonably certain that the operation would not be successful, or unless it was impossible for him to procure a competent surgeon to perform it, no one can say that his case was incurable. Eggen v. U. S., supra (C. C. A.) 58 F.(2d) 616, 620. Cf. Proechel v. U. S., supra (C. C. A.) 59 F.(2d) 648, 650.

This action is not to secure compensation for injuries suffered by a soldier; it is upon a policy of insurance, and subject to the same rules as any other such contract, except that

the terms are to be liberally construed. We have no disposition to construe them otherwise, but the language must be given its fair meaning, and the recovery must depend upon evidence. We think that the plaintiff proved neither that when the policy lapsed he was suffering from the only disease which was put forward as permanent, nor that that disease was incurable by the means at his disposal. If so, while he may well be entitled to other and liberal consideration from the United States, it is not his debtor on the policy.

Judgment reversed; new trial ordered.