## UNITED STATES v. WILFORE.
### No. 414.

Circuit Court of Appeals, Second Circuit.
July 5, 1933.

Harry B. Amey, U. S. Atty., of Burlington, Vt., and Davis G. Arnold, of Washington, D. C., and A. W. De Birny, of Burlington, Vt., Attys. Veterans' Administration, for the United States.

Marcell Conway, of Barre, Vt. (Gelsie Monti, of Barre, Vt., on the brief), for plaintiff-appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an appeal by the government from a judgment in favor of Floyd E. Wilfore, who brought an action to recover upon a war risk insurance policy. The principal assignment of error is that the trial judge improperly refused to direct a verdict in favor of the government because there was no evidence from which a jury could find that the plaintiff was suffering from a permanent and total disability at the time that his policy of insurance lapsed.

The defendant, by its answer, admitted that the policy was in force on May 2, 1919, the date when the plaintiff was discharged from military service. The next payment on the policy fell due on June 1, 1919, and the plaintiff, by the regulations of the Veterans' Bureau, was allowed thirty-one days of grace in which to make payment. The plaintiff made no payments after his discharge, and accordingly his policy lapsed at midnight July 2, 1919. In order to support a recovery on the policy, it must be shown that, at the time it lapsed, the plaintiff was permanently and totally disabled.

The plaintiff enlisted in the army on June 19, 1917. While in service in France, he was gassed and contracted pneumonia, influenza, and spinal meningitis. He was recovering from the disease last mentioned at the time of his discharge. He testified that at the time of his discharge, and ever since, he has suffered from weakness and pain in his back, and that it caused him acute discomfort to bend over and straighten up, or to sit in one position for any length of time. He further stated that shortly after his discharge he consulted a physician, who advised him to wear an abdominal belt and prescribed a diet, and that he has ever since worn a supporting belt when working. Since the termination of his military service, he has worked intermittently as machinist, carpenter, and mail carrier.

Dr. R. G. Hamilton testified that he gave the plaintiff a physical examination for admission to the civil service in December, 1921, and at that time he found the plaintiff suffering from chronic nephritis and sacro-iliac and sacral-lumbo trouble. Other medical testimony established that a "sacroiliac condition" is an affliction of the pelvis which consists of a loosening of the ligaments which hold together the ilium and the sacrum, and which results in a hampering of mobility and a pain in the back. Dr. Waldo R. Harkness testified that he examined the plaintiff in 1932, a few months before the trial of the case, and found the plaintiff suffering from the same conditions. There was testimony from which the jury might find that the sac-

roiliac condition rendered it impossible for the plaintiff to follow continuously and substantially gainful occupation, and that at the time of the trial the plaintiff's condition was incurable.

But the government is not liable on this policy for a total disability occurring subsequent to its lapse, even though it be shown that the total disability was caused by conditions which arose while the policy was in force [United States v. Lumbra (C. C. A.) 63 F.(2d) 796; United States v. McLaughlin (C. C. A.) 53 F.(2d) 450; Tomlinson v. United States (D. C.) 18 F.(2d) 795]; and the fact that a disability arising during military service is found to be incurable, long after the policy has lapsed, while some evidence of conditions existing at the date of lapse, is not of itself evidence from which a jury can find that the ailment was in fact incurable at the earlier date [United States v. Clapp (C. C. A.) 63 F.(2d) 793; Eggen v. United States (C. C. A.) 58 F.(2d) 616]. The insured must show that at the time of the lapse, his disability was based upon conditions which rendered it reasonably certain that it would continue throughout his life. We think that there is a total failure of such evidence in the present case. It is noteworthy that in September, 1920, he applied for life insurance and then stated in his application that his health was good, and that he worked continuously from October, 1919, to October, 1920.

Dr. Hamilton testified that, in his opinion, there is no cure for chronic nephritis. But there is no evidence that nephritis rendered it impossible for the plaintiff to follow a gainful occupation. All of the medical testimony, and indeed the plaintiff's own, was to the effect that the sacroiliac condition, and not the nephritis, was responsible for the plaintiff's inability to labor continuously. Dr. Harkness, called by the plaintiff, testified that 50 per cent. of sacroiliac cases recover. Dr. Robert L. Maynard, called by the defendant, stated that sacroiliac conditions are thought to be curable in the great majority of cases. Thus there is no evidence that the disease which caused the plaintiff to be totally incapacitated at the time of his discharge was reasonably certain to continue throughout his life. The existence of an incurable condition in 1919 was a strictly medical question, which the jury could not determine of its own belief. United States v. Clapp (C. C. A.) 63 F.(2d) 793.

We hold that there was no evidence from which a jury could find that the plaintiff was totally disabled at the time his policy of insurance lapsed, and that the trial court erroneously denied the defendant's motion for a directed verdict.

The judgment is accordingly reversed.