## UNITED STATES v. HARRISON.
### No. 4941.

Circuit Court of Appeals, Seventh Circuit.

Nov. 2, 1933.

Rehearing Denied Jan. 8, 1934.

T. B. Orbison, of Indianapolis, Ind., for appellant.

Frank C. Wade, of Terre Haute, Ind., for appellees.

Before EVANS, SPARKS, and FITZHENRY, Circuit Judges.

FITZHENRY, Circuit Judge.

This is an appeal from a judgment of the District Court for the Southern District of Indiana in favor of the appellees (plaintiffs below), upon a war risk insurance contract.

The insured, Hobart McKinley Harrison, enlisted in the United States Army on October 3, 1917, and was honorably discharged December 17, 1918. While he was in the service an application for insurance, dated January 17, 1918, was made and war risk term insurance in the sum of $10,000 granted to him; Louetta Harrison, his mother, was named as beneficiary.

It is claimed that the contract matured by reason of the insured having become totally and permanently disabled December 17, 1918, when discharged from military service.

Trial by jury was waived and the cause heard by the court. At the conclusion of plaintiffs' testimony, the court denied the government's motion for judgment in its favor on the ground that there was no substantial evidence in the record to show insured was totally and permanently disabled at any time while his policy of insurance was in force. Upon a full hearing the court found the issues for the plaintiffs and entered judgment accordingly.

It was incumbent upon appellees in the District Court to show that the insured was both totally and permanently disabled on or before January 31, 1919. United States v. Crain (C. C. A.) 63 F.(2d) 528; Eggen v.

United States (C. C. A.) 58 F.(2d) 616; Nalbantian v. United States (C. C. A.) 54 F.(2d) 63.

While insured was at Camp Zachary Taylor, Ky., he was admitted to the base hospital on October 7, 1918, and was discharged and returned to duty, October 15, 1918. The record of final diagnosis made by the army surgeon was: "Observation, influenza not found." During this period the insured had a temperature above normal from October 8th to October 11th and was given as treatment, rest, light diet, and cathartic. At the time of his discharge from the service, December 17, 1918, the insured certified that "at the present time I have no wound, injury or disease incurred in the military service or otherwise," and the examining surgeon certified that the insured had been given a careful physical examination and was found to be physically and mentally sound.

To sustain the burden cast upon appellees it was shown that the insured returned to his home at Rockville, Ind., and in January went to Wabash College, where he remained for two or three months. He was nervous and not as rugged when he returned home as when he enlisted.

July 10, 1920, insured filed claim for compensation, in which, in answer to question 11: "Nature and extent of disability claimed," he stated, "Bad teeth," and in answer to the question, "Cause of disability," he stated "Neglect in the military service." In answer to the question, "Occupations since discharge, dates of each, and wages received? If less than before, why?" the insured stated, "Machinist (occupation)—Ja. 12, 1920 (commencing date)—Still there (ending date)—$125 (monthly wage)"; (present employer) "Nordyke & Mormon Co."

A general physical examination of the insured was made on July 10, 1920, in connection with his application for dental work to be performed at government expense by Dr. Joseph R. Bloomer. The doctor stated that insured asked for no compensation, but for dental work; that insured gave Dr. Bloomer a history of having had influenza in October, 1918; having been turned down for a commission November 7, 1918, on account of high blood pressure. On being re-examined he was passed for commission November 10, 1918; that he had a headache occasionally in the back of his head; that he had to quit work for one day; that the insured's teeth were in bad repair; that the insured had been constipated and had a coated tongue; that his blood pressure was nor-

mal, urine acid, no albumin, no sugar, pulse normal, heart negative, lungs negative, no disease found; prognosis good; that he was then of the opinion the insured was able to perform his prewar occupation; that examination by the stethoscope did not reveal any heart murmur or leaky valve. Upon the trial the doctor, however, testified that he did not think he gave the insured a very thorough examination July 10, 1920; that the insured's appearance was good July 10, 1920, and remained good until his death; that he had not noticeably lost any weight, made no complaint, never said much about his condition, but did not seem to have much pep.

Later, the insured made application for compensation and found that the physician's examination of July 10, 1920, was standing against him. On July 1, 1927, insured made application for yearly renewable term insurance, in which he said that he had not been ill or contracted any disease or suffered any injury or been prevented by any ill health from attending his usual occupation or consulted a physician regarding his health since lapse of his insurance. This application also showed that the same Dr. Bloomer had examined the insured and stated that he found no abnormality of the heart, no irregular pulse or other defect. In Dr. Bloomer's opinion at that time, July 7, 1927, insured was acceptable as an insurance risk.

The evidence discloses that immediately after returning from the service, insured went to Wabash College for two or three months, then quit because of his nervous condition; that he rested at home in the summer and fall and returned to his usual occupation, January 12, 1920, and was still at work there at the time of making his application for dental service at government expense, July 10, 1920, although his mother said that he only worked for Nordyke & Mormon Company for about a week and then had to quit and come home, which statement was contradicted by other witnesses. After leaving Wabash College, he worked for one Stark at different times, selling automobiles; went to Brown's Business College for a while at Terre Haute, then took an agency for the Studebaker automobile; that he was in the automobile business from 1923 until 1927.

May 5, 1921, another physician, Dr. W. G. Crawford, examined the insured and found that his heart was enlarged; that there was a murmer in the apex and one at the aorta period; in Dr. Crawford's opinion at that time insured was not able to do work requiring physical exercise; that it was possible the insured could do some clerical work

requiring no physical exercise. He did not pretend to say when the heart condition had its inception.

The insured was examined again in 1925, by another physician, Dr. T. J. Collings. He found myocarditis or mitral valvular lesion. An examination did not show how long the condition had existed; that the soldier gave a history of having influenza; that he recalled no history of anything else which could be a factor in causing heart trouble; that at that time insured was not able to follow any occupation requiring physical exercise and would never recover completely. He said it was his opinion the heart condition probably could and did exist since the attack of influenza. The doctor stated that if the insured was as bad since discharge as when examined in 1925, he was not able to follow continuously any substantially gainful occupation since discharge. However, he admitted that he did not know what insured's condition was in 1921.

In addition to the medical testimony offered, there was testimony of several lay witnesses, notably the beneficiary, the mother of insured, his sister and brother, a banker friend, a bookkeeper for Stark, in whose employ insured worked for five or six months. The inquest after insured's death showed an acute condition of the heart, causing death December 2, 1927, chronic myocarditis being a contributory cause.

From this résumé of the proof, it is clear that the insured had a fever and was sent to the hospital in October, 1918; that he was there for observation and the records show that influenza was not found. December 17, 1918, insured was honorably discharged from the service, went home and entered college; after two or three months in college, on account of his nervous condition, he quit school and returned home; later, went to business college, and in January, 1920, went to work at his trade, earning $125 a month. It is shown by his own sworn statement of July 10, 1920, he had no ailments other than bad teeth, and his own doctor corroborated that statement and appeared again in his behalf seven years later, when he was attempting to procure a yearly renewable insurance contract with the government, and certified that the insured had no abnormality of the heart, no irregular pulse, no murmur or other defect. However, notwithstanding the testimony of the doctor, the soldier must have been afflicted to a certain extent, but the record utterly fails to connect his condition for a number of years before his death and at the time of his death with any ailment which existed prior to the 31st day of January, 1919, when his contract of insurance lapsed.

In all the medical testimony in the case there is an occasional guess that probably his heart condition developed from influenza contracted in the service; at most that connection is but a guess and the persuasiveness of those guesses is negligible in the light of the fact that the official records and the admissions of the insured himself are to the effect that no influenza was found at the time in question and that he had no disease or injury when he left the service. The strongest proof in this record fails to show that on and prior to January 31, 1919, the soldier was permanently and totally disabled within the meaning of the war insurance contract sued upon. The insurance policy was allowed to lapse and the record very clearly shows that it was treated as lapsed by the insured for more than eight years.

The judgment of the District Court in favor of appellees must be and is reversed.