## DENNING v. UNITED STATES.
### No. 18.

Circuit Court of Appeals, Second Circuit.

Dec. 11, 1933.

Harry B. Amey, U. S. Atty., of Burlington, Vt. (Davis G. Arnold, of Washington, D. C., and A. W. De Birny, of Burlington, Vt., of counsel), for the United States.

Ernest W. Gibson, Jr., of Brattleboro, Vt., for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an appeal by the government from a judgment in favor of the administratrix of the estate of James T. Denning, who brought action to recover upon a war risk insurance policy. The judgment must be reversed because there was no substantial evidence that on May 31, when the policy lapsed for nonpayment of premiums, it was reasonably certain that the insured was permanently and totally disabled.

Denning was a soldier in the World War, and served overseas as a member of Company G, 101st Ammunition Train, 26th Division. He landed in France October 21, 1917, and went into active service at the front in February, 1918, in the Soissons region. He remained at the front almost continuously until after the Armistice. As a member of the Ammunition Train it was part of his duty to carry ammunition from rail heads and dumps to the artillery and infantry. He trucked it from one-half to five miles at night under shell fire for six or seven nights per week. From the Toul sector Denning moved to the Chateau Thierry region with the 26th Division, and was gassed about July 25, 1918. There was evidence that before he enlisted he took an active part in athletic sports and was in good health, and that he remained in good health until after he was gassed, but that before he left France he had a cough and lacked his former vigor. Upon returning to America, he was discharged at Camp Devens, on April 29, 1919, returned to his home in Brattleboro, Vt., and began to work for the Central Vermont Railroad as a brakeman. He continued to work as a brakeman from May 5, 1919, until January 1, 1921, receiving as wages for the period $2,473.94. He found that occupation burdensome and accordingly obtained employment as bookkeeper and clerk in Richardson's Meat Market in Brattleboro at a reduced salary of $20 a week, working there from some time in 1921 until March 16, 1924, and receiving approximately $2,800 for that period. He continued to work at Richardson's from the latter date until December 31, 1924, receiving $1,153.01, and from January 1, 1925, until December 31, 1925, receiving $1,435.17, and from January 1, 1926, until June 26, 1926, receiving $716.33. From June 27, 1926, to December 31, 1926, he worked for the Central Vermont Railroad, as yard clerk, receiving $719.64, and from January 1, 1927, until September 10, 1927, receiving $980.82. On September 12, 1927, after passing a civil service examination, he obtained an appointment as United States immigration inspector and served at Niagara on the Canadian border from September 12, 1927, until January 21, 1929, receiving for his services during that period $2,775. On January 21, he was taken down with pneu-

monia, and died on January 31, 1929. There was evidence that the cough which began after he was gassed continued for the rest of his life and at times so disabled him that he was obliged to absent himself from work, and that, though paid steady wages during nearly the whole period, he only received what he did because he was helped by his fellow workmen and was favored by his employers. There was testimony that his work was bad for his health, that complete rest might have resulted in a cure, and that he continued to labor because of financial necessity. Evidence is said to have been lacking. that Denning worked with regularity. But his work with the Central Vermont Railroad seems to have been substantially regular. He was at the Naval Hospital at Chelsea, Mass., for examination and treatment from February 16 to March 7, 1921, and it does not appear that he worked much between January, 1921, and October, 1921, when he secured employment at Richardson's Meat Market. He worked there with substantial regularity from October, 1921, to June 26, 1926, and received steady wages for his services.

It was shown that after Denning's employment as an immigration inspector he drew full pay for every working day. The assistant director of the immigration service testified that he had been instructed to watch the insured's physical condition; that he worked regularly and well and did not grow worse during his employment. In such circumstances it cannot be said that Denning had sustained "permanent total disability" at the date when the policy lapsed.

The regulations of the Bureau of War Risk Insurance define total disability as "any impairment of mind or body which renders it impossible for the disabled person to follow continuously any substantially gainful occupation." There was no testimony that the condition of Denning in May, 1919, even if he was then subject to incipient tuberculosis, was incurable and hence "permanent." Indeed, his own experts, as well as those called by the government, testified that tuberculosis is often cured. Moreover, the whole record shows that he worked for ten years almost continuously and with no decreased capacity. Nor can it be fairly argued that he was unable to work during this period in which he

secured so much gainful employment and had been engaged in work almost steadily. While his physicians said that he should have rested in order to achieve a complete cure, there was no testimony that his condition grew worse under the work he did or that in May, 1919, it could be said with reasonable certainty that his disability would continue during life.

Plaintiff's medical experts differed from those testifying for the government, in that the former were inclined to think that Denning's case was one of tuberculosis while the latter testified that he had chronic bronchitis. But the evidence that he had contracted tuberculosis was unsubstantial. The analysis of his sputum showed no traces of tuberculosis, and no X-ray examinations of the lungs were made. There was not the slightest proof offered that at the time the policy lapsed Denning's case was incurable, whether it was tuberculosis or bronchitis. Moreover, for a jury to find that Denning was totally disabled, when he in fact did such a large amount of work for ten years prior to his death, shows that the verdict was founded on sympathy rather than reason. He doubtless was subject to coughing spells and may have felt worn out at the end of the day, but there was overwhelming evidence that during the last year of his life he did hard work as an immigration inspector and labored in all sorts of weather and in the most exposed places. Accordingly the contention that he was totally and permanently disabled during this time is utterly unreasonable. Even if this were not so, it could not be said with reasonable certainty that in May, 1919, he was permanently disabled. Indeed such a resolution of the facts would be contradicted by all fair inferences from the evidence in the case.

Upon the record before us a verdict should have been directed for the government. With less evidence for the plaintiff, it was so held in Mason v. United States (C. C. A.) 63 F. (2d) 791. See, also, United States v. Clapp (C. C. A.) 63 F.(2d) 793; United States v. Wilfore (C. C. A.) 66 F.(2d) 255; Dukes v. United States (C. C. A.) 66 F.(2d) 73; United States v. Lyle (C. C. A.) 54 F.(2d) 357; United States v. Fly (C. C. A.) 58 F.(2d) 217.

Judgment reversed.