## EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES v. SINGLETARY.

### No. 3607.

Circuit Court of Appeals, Fourth Circuit.

June 11, 1934.

H. J. Haynsworth, of Greenville, S. C. (C. F. Haynsworth, of Greenville, S. C., on the brief), for appellant.

James H. Price, of Greenville, S. C. (James D. Poag and W. A. Bull, both of Greenville, S. C., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and MEEKINS, District Judge.

SOPER, Circuit Judge.

This is an action to recover upon a policy of group life insurance issued by defendant to the Southern Railway Company for the benefit of its employees. The plaintiff held a certificate under this policy insuring his life in the amount of $5,000 and containing a provision for payment of the full principal sum upon proof of total and permanent disability. In April, 1932, plaintiff brought this suit in the court of common pleas of Greenville county, S. C., to recover the full amount under the policy, alleging that he became totally and permanently disabled while in the employ of the railway, and the cause was removed to the District Court upon the ground of diversity of citizenship. Trial before a jury resulted in a verdict and judgment for the plaintiff, and defendant has taken this appeal relying principally upon the refusal by the trial court of its motion for directed verdict, urged upon the ground that there was no substantial evidence of total and permanent disability while plaintiff's certificate was in force.

The policy contained, in paragraph 10, the usual disability provision, to the effect that: "If proof shall be furnished the Society that any employee insured under this policy has before having attained the age of 60, become wholly disabled by bodily injuries or disease, and will be wholly and presumably permanently prevented thereby for life from pursuing any and all gainful occupations, the Society will pay * * * the full amount of the insurance on such life." Paragraph 7 of the policy provides that: "The insurance under this policy upon the life of any employee covered by this contract shall automatically cease and determine * * * upon termination of such person's employment with the employer. * * *" Premiums on the policy were paid monthly in advance by the employer and were deducted from the pay of employees.

Plaintiff was in the employ of the South-

ern Railway for seventeen years, and at the time of the trial was 51 years old. His position was that of chief clerk to the roadmaster at Greenville, S. C., and his duties were almost exclusively clerical, consisting in the main of bookkeeping and stenography. On June 8, 1931, a dispute arose between plaintiff and his superiors as to the application of a small amount of money some years before, and plaintiff was discharged from the service. The evidence is conflicting as to whether plaintiff was informed of his discharge on that day, but it is established beyond question that the discharge became effective at least by June 15, 1931, the date to which his salary was paid. The slight difference in dates is not material in this case.

In the short interval between June 8th and 15th, plaintiff made a number of efforts to adjust the matter of his discharge, going first, on the afternoon of June 8th, to see the chief engineer of maintenance of way and structures on his private car in the Greenville yards. An unsuccessful conference there was interrupted by the starting of the train, and the plaintiff alighted while the train was in motion. According to his evidence, he struck his knee against a small right of way post in doing so, and the blow caused him considerable pain. The injury consisted of an internal derangement of cartilage at the knee joint, later causing water on the knee, and plaintiff was required to use a cane thereafter when walking. On the next day, however, June 9th, plaintiff made a trip to Charlotte, N. C., in a further effort to get back or retain his job, and he did not go to a doctor until that afternoon. He received further treatment for his knee from his family physician on June 17th and 19th, and on September 8th, went to see Dr. White, a bone specialist in Greenville, who advised an operation. So far as appears, none had ever been performed up to the time of the trial.

■ There is no evidence, beyond the broad assertion made by plaintiff and his wife that he was unable to work after June 8, 1931, to show that the injury to plaintiff's knee alone rendered him totally and permanently disabled. While painful, it did not altogether prevent him from walking; and he was seen walking with a cane that summer at his place in the mountains, by a number of witnesses. In December, 1931, he went hunting. His own physician declined to testify that the knee injury alone would prevent plaintiff from performing the clerical work to which he was accustomed, and admitted that the condition could be cured by an operation. This view is in accord with medical testimony offered by the defendant that plaintiff could walk to work and successfully perform clerical duties, and that an operation would restore the knee to normal condition. Total and permanent disability cannot be predicated upon such a condition; for, even if it could be viewed as total while it continues, it cannot be viewed as permanent when admittedly curable. Garrison v. United States (C. C. A.) 62 F.(2d) 41, 42; United States v. Clapp (C. C. A.) 63 F.(2d) 793, 795; Eggen v. United States (C. C. A.) 58 F.(2d) 616, 620.

■ The only contention of any force made to sustain the verdict is that plaintiff was disabled by a combination of the knee injury with two other conditions from which he was suffering, kidney trouble and amoebic dysentery. There was testimony that plaintiff passed a kidney stone on June 9, 1931, while on the train going to Charlotte, and of his having done so on other occasions; but there was no evidence that the condition was permanent in character, although at times it affected his ability to work. The most serious trouble from which plaintiff was suffering was the dysentery. It was testified that he had periodic attacks of this disease, usually during the summer, for several years prior to 1931. He was usually disabled for a week to a month when these attacks came on. In the fall of 1931 he had a particularly severe attack, and by June, 1932, an abscess of the liver had developed, accompanied by partial paralysis, which made it necessary for plaintiff to go to the hospital. He responded to treatment and was able to walk on leaving the hospital, but apparently has never recovered to an extent which permits him to do any work.

We do not think, however, that there was any substantial evidence that plaintiff became totally and permanently disabled prior to June 15, 1931, the date on which his employment came to an end and the insurance automatically terminated, in accordance with the provisions of the policy. The serious condition which we have just described did not develop until the fall of 1931 or the spring of 1932, and there is no evidence that plaintiff was suffering from a disabling attack of dysentery in June, 1931. He had worked up to June 8th, without complaint, and made repeated efforts in the following week to regain his job. He did testify that he had an attack of dysentery on June 8th, but there is no indication in the evidence that it was other than mild, and a number of witnesses testified without contradiction that all through the summer of 1931 he appeared

normally strong and healthy, except for his limp. There is no medical testimony to show that plaintiff was seriously afflicted with dysentery, or prevented thereby from working during that time. In this state of the evidence, we cannot agree that it might reasonably be concluded that plaintiff's condition was such, on or prior to June 15, 1931, as to wholly and presumably permanently prevent him, for life, from pursuing any and all gainful occupations. We must view the evidence, it is true, in the light most favorable to the plaintiff and draw in his favor all the inferences fairly deducible from the facts which his evidence establishes [Lumbra v. United States, 290 U. S. 551, 54 S. Ct. 272, 273, 78 L. Ed. 492; Garrison v. United States (C. C. A.) 62 F.(2d) 41; Caldwell v. Volunteer State Life Ins. Co., 170 S. C. 294, 170 S. E. 349]; but the only inference that can fairly be drawn from the testimony is that during the life of his policy plaintiff had at best a temporary partial disability from his curable knee injury, and a quiescent disease that became active and perhaps disabled him six months or a year later. The mere fact that a disease has its origin during the period covered by insurance is not sufficient to sustain an action on the policy; the disease must have reached a stage permanently and totally disabling the insured, while his policy is in force. Lumbra v. United States, supra; United States v. Diehl (C. C. A.) 62 F.(2d) 343, 345; Hicks v. United States (C. C. A.) 65 F.(2d) 517; United States v. Rodman (C. C. A.) 68 F.(2d) 351. Dysentery does not render all who are afflicted with it totally and permanently disabled, and there was no medical testimony in this case to show the seriousness and probable permanency of the disease during the life of the policy. United States v. Hairston (C. C. A.) 55 F. (2d) 825.

We have not overlooked the fact that plaintiff and his wife both testified that he had been unable to work since June 8, 1931. His physician testified also that he thought plaintiff permanently disabled at that time "without an operation." These statements simply reflected the opinion of the witnesses that plaintiff could not work until operated on because of the condition of his knee, and were insufficient to create an issue for the jury. Likewise irrelevant, of course, was the statement of another expert, Dr. Cunningham, that in his opinion plaintiff was disabled at the time of the trial.

Defendant complains also of the admission in evidence of a letter from plaintiff to the chief of the group insurance department of the railway, in which the nature of plaintiff's disability is described. We think the letter was properly admitted to show that proof of disability was furnished, and the trial judge instructed the jury that they were to limit their consideration of it to that issue.

For the reasons stated, there was error in refusing defendant's motion for a directed verdict, and the judgment must be reversed and the case remanded for a new trial.

Reversed and remanded.