## UNITED STATES v. HANNAN et al.

### No. 1382.

Circuit Court of Appeals, Tenth Circuit.

Aug. 13, 1936.

W. Clifton Stone, of Washington, D. C. (Wilbur C. Pickett, Sp. Asst. to the Atty. Gen., Young M. Smith, Atty., Department of Justice, and Will G. Beardslee, Director, Bureau of War Risk Litigation, both of Washington, D. C., Daniel Dillon, Atty., Bureau of War Risk Litigation, of Oklahoma City, Okl., and C. A. Summers, U. S. Atty., and C. W. Miller, Asst. U. S. Atty., both of Muskogee, Okl., on the brief), for the United States.

A. A. Kelley, of Madill, Okl., for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

This is an action to recover on a war risk insurance contract. The insured enlisted in August, 1918, was discharged in July, 1919, and died in December, 1922. Payments of premium and the grace period continued the policy in force to September 1, 1919. Trial by jury was waived, and at the conclusion of the evidence the court denied a motion made by the government for judgment in its favor on the ground that the evidence would not support any other conclusion. The court then found that insured was totally and permanently disabled from the date of discharge, and the only question presented is whether that finding is supported by substantial evidence.

There was evidence which tended to establish these facts. Insured was well developed at the time of enlistment and weighed 140 pounds. He signed the usual statement at discharge certifying that he was in good health. He walked with a cane when he arrived at the station immediately after discharge. A relative met him, took his bag, and they started to walk to a residence about three and a half blocks distant. Insured held out for about half the distance, and then had to stop in the shade of a building and rest. They then walked fifty feet farther and he sat on the curb to rest. At the time of his return, and continuously thereafter, he was pale, thin, weak, and appeared to be sick. He coughed incessantly and was restless. He remained at home seven or eight weeks and he did no work. Some time later he drove a truck two or three weeks delivering groceries from a wholesaler to retailers, but he did none of the loading or unloading. At a subsequent time he drove the truck intermittently for three or four months; but it was only intermittent and without pay. He tried to pick cotton in the fall, but gave out and had to quit. He then rented a farm near Altus, Okl., and helped to make a crop in 1920, but the size of the farm or the extent of the crop is not shown. He visited a relative occasionally during the year, and never attempted to work while there. He returned home after the year thus spent and was weaker and coughed more. He later went to a hospital, and the record does not indicate that he ever did any more work.

Certain records from the Veterans' Administration were introduced without objection. It appeared from them that in October, 1921, insured submitted an application for disability compensation in which it was stated that his disability was pulmonary tuberculosis; that it began in December, 1918, and was the result of influenza. The application resulted in a rating of permanent and total disability from November 3, 1921. Physical examinations were conducted in May, September, and November, 1922, and the diagnoses were pulmonary tuberculosis, active, all lobes, far advanced, advanced, prognosis unfavorable, guarded, grave. An affidavit from the Bureau of Vital Statistics, signed by Dr. Blaylock, county superintendent of public health (deceased at the time of trial), was likewise introduced without objection. It recited that the doctor attended insured from June, 1921, to the date of his death and that death was caused by tuberculosis of three years' duration. Dr. Bates, an employee of the Administration since 1929 and a specialist in tuberculosis and diseases of the heart, was called as a witness for the government. He expressed the opinion that insured had active tuberculosis at the time of discharge. That conclusion was based primarily upon records of the Administration, particularly an X-ray examination made in December, 1921, which disclosed considerable infiltration with a large cavity, positive sputum, and a diagnosis of far advanced tuberculosis. He stated that he could not reconcile that condition as one of recent origin or as having developed since the date of discharge. He further testified without objection that in his opinion insured was totally and permanently disabled at the time of discharge. It is now settled that testimony of that kind is inadmissible and without weight. United States v. Spaulding, 293 U.S. 507, 55 S.Ct. 273, 79 L. Ed. 617; United States v. Steadman (C. C.A.) 73 F.(2d) 706; United States v. Bowman (C.C.A.) 73 F.(2d) 716; United States v. Blumenthal (C.C.A.) 77 F. (2d) 219. But the question was not presented to the trial court, and reversal is not sought on that ground.

Proof of minimal or incipient tuberculosis at the determinative date will not

support recovery on a policy of this kind. Nicolay v. United States (C.C.A.) 51 F. (2d) 170; United States v. Thomas (C. C.A.) 64 F.(2d) 245. But considering all of the facts and the inferences which may reasonably be drawn from them, particularly the condition of insured at the time he arrived home; his inability to work during the following fall, the far advanced state of the disease a little more than two years after the grace period expired, the intervention of death slightly more than three years after the grace period ended, and the expert opinion that the disease was active at the time of discharge, it cannot be said on appeal that the finding of total and permanent disability is without substantial support. Compare United States v. Monger (C.C.A.) 70 F. (2d) 361.

The judgment is therefore affirmed.