**ROBINSON et al. v. UNITED STATES.**

No. 109.

Circuit Court of Appeals, Second Circuit.

Jan. 4, 1937.

344

George L. Grobe, U. S. Atty., of Buffalo, N. Y., Julius C. Martin, Director, Bureau of War Risk Litigation, of Washington, D. C., and Wilbur C. Pickett and Randolph C. Shaw, Sp. Assts. to the Atty. Gen.

Daniel J. O'Mara and Edmund Clynes, both of Rochester, N. Y., for appellees.

Young M. Smith and Samuel M. Gold, both of Washington, D. C., Attys. U. S. Department of Justice.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Three infant children of Thomas W. Mowry have sued on a war risk insurance policy upon the claim that the decedent had suffered a total and permanent disability by reason of pulmonary tuberculosis prior to June 1, 1919, the date on which the policy lapsed.

The policy was issued to him while overseas pursuant to the War Risk Insurance Act (section 400 et seq. [40 Stat. 400]). Upon the authority of section 13 of the Act (40 Stat. 399), there was promulgated March 9, 1918, Treasury Decision 20, which provides:

"Any impairment of mind or body which renders it impossible for the disabled person to follow continuously any substantially gainful occupation shall be deemed * * * to be total disability.

"Total disability shall be deemed to be permanent whenever it is founded upon conditions which render it reasonably certain that it will continue throughout the life of the person suffering from it. * * *"

██ Pulmonary tuberculosis, relied on to establish a total permanent disability under this insurance contract, must be substantiated by evidence showing that the disease had progressed to an incurable stage while the insurance was in force. Mason v. United States, 63 F.(2d) 791 (C.C.A.2); Falbo v. United States, 64 F.(2d) 948 (C.C.A. 9), affirmed 291 U.S. 646, 54 S.Ct. 456, 78 L.Ed. 1042; United States v. Walker, 77 F.(2d) 415 (C.C.A.5). The testimony shows the decedent may have had tuberculosis in an incipient form during the period of his insurance protection, but proof of incipient tuberculosis alone is inadequate. Army records fail to show the decedent required medical treatment during his period of service. An affidavit, verified November 1, 1922, by the decedent, stated that he was afflicted with tuberculosis and that he developed a cough during the war as a result of being exposed in open tents while convalescing from influenza. He said he occasionally raised matter which was blood specked, that his comrades joked him about the "old con," and that on his return home he had recurrent night sweats which made him weak and tired the next day. Decedent thought that the cough was due to a cold. At the time of his discharge upon his certification and that of his commanding officer and examining surgeon, his health was said to be good.

Upon his discharge the decedent went to Nebraska, where he worked on a farm. In March, 1920, he obtained employment as a railroad hostler, earning $35.28 a week. In August of the same year he went to Wyoming and worked as a "laborer, gang-pusher and painter." There is some evidence that he tired easily and lost weight, falling from 140 to 114 pounds. October 10, 1920, he received medical attention and made claim for compensation which was founded on finding an infiltration of the lung and tuberculosis in the sputum. The medical diagnosis was pulmonary tuberculosis. The decedent continued at work until September, 1921, when, because of complaint by his fellow workers about his coughing, he resigned from his employment. His employer's affidavit states that he was not then disabled so as to affect his general efficiency. In November, 1921, he re-entered the employ of the railroad company as a stationary engineer earning $166.64 a month, working a seven-day week of eight hours per day, part of the time on the night shift. In April, 1922, he left his work and his physician advised him to go to a sanatorium. It is conceded that he was totally and permanently disabled in 1922. He died January 3, 1923.

His family physician testified that the tuberculosis from which he suffered had several stages; that in its dormant stage it could not be detected and that this might account for the failure of the examining physician to find anything at the time of the decedent's discharge; also that in its incipient stage it is curable by proper routine, diet, and rest. He declined to express an opinion as to when the condition of incipient tuberculosis began.

■ As to the totality of the disability, it is shown that for three years after his discharge and after the lapse, he engaged in various occupations. The mere fact that work is done, however, is not decisive. Eggen v. United States, 58 F.(2d) 616, (C.C.A.8). See Lumbra v. United States, 290 U.S. 551, 560, 54 S.Ct. 272, 78 L.Ed. 492. The nature of the work, the conditions under which it is done [see Rackoff v. United States (C.C.A.) 74 F.(2d) 720], and its effect upon the decedent's life are elements to be considered. If the work impaired his health and accelerated his disease, it may not be said that he was able to carry on a "gainful occupation." See U. S. v. Smith, 68 F.(2d) 38 (C.C.A.2); Wilks v. United States, 65 F.(2d) 775 (C.C.A.2). In October, 1920, a doctor diagnosed a tubercular condition. From this and the testimony of his family physician, it would be fair for a jury to assume that at or about the time of the lapse of the policy the decedent was afflicted with incipient tuberculosis. Under these circumstances, a jury might find that it was detrimental to his health to engage in the described occupations, however well he may have worked or however strenuous the work may have been. It is true that the appellees' expert testified that, if the decedent's condition had been arrested by proper care, he might then have engaged in certain types of gainful employment. Viewed as of the time of the lapse, however, continuous gainful work was in reality at least temporarily rendered impossible, and the decedent may reasonably be said to have been totally disabled.

■ But the proof was insufficient to submit to the jury the question of the permanency of the disability. U. S. v. Clapp, 63 F.(2d) 793 (C.C.A.2). On the appellees' expert's testimony, the condition was curable. It is not enough that in the course of events the decedent became permanently disabled. Eggen v. United States, supra. Moreover, there is evidence that he refused hospitalization, thus contributing to the permanency of his disease. Puckett v. United States, 70 F.(2d) 895 (C.C.A.5) cert. denied, 293 U.S. 555, 55 S.Ct. 99, 79 L.Ed. 657. His participation for three years in various gainful occupations has bearing upon the seriousness of his condition at the time of the lapse. There is no expert testimony that the disease was such that the decedent was permanently disabled while the policy was in force. To allow the jury to so conclude was to permit unwarranted speculation. United States v. Clapp, supra; United States v. Wilfore, 66 F.(2d) 255 (C.C.A.2).

United States v. Hannan, 85 F.(2d) 341 (C.C.A.10) is relied upon. But there the court sustained a finding of permanent disability upon evidence that the insured after his discharge was unable to walk, was pale and thin, coughed incessantly, and was unable to work, although later he engaged in light and intermittent occupations.

Judgment reversed.