**UNITED STATES v. RAKICH.**

No. 10636.

Circuit Court of Appeals, Eighth Circuit.

June 8, 1937.

Keith L. Seegmiller, of Washington, D. C. (Clinton R. Barry, U. S. Atty., of Fort Smith, Ark., G. W. Hendricks, Sp. Asst. to U. S. Atty., of Little Rock, Ark., John E. Harris and Duke Frederick, Asst. U. S. Attys., both of Fort Smith, Ark., Julius C. Martin, of Washington, D. C., and Wilbur C. Pickett, Sp. Asst. to the Atty. Gen., on the brief), for appellant.

V. James Ptak, of Fayetteville, Ark. (John Mayes, of Fayetteville, Ark., on the brief), for appellee.

Before STONE, SANBORN, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

This action at law was commenced May 24, 1932, to recover on a policy of war risk insurance issued to Tony Rakich, who was in the United States Army from February 22, 1918, to May 17, 1919. The policy lapsed, for nonpayment of premiums, July 1, 1919. In his complaint the insured alleged that before its lapse the policy had matured by reason of his total and permanent disability due to pulmonary tuberculosis. This the government denied. The issues were tried to a jury. At the close of the evidence, the government moved for a directed verdict. Its motion was denied. The jury returned a verdict for the insured, upon which judgment was entered, and this appeal followed. The government insists that the trial court should have directed a verdict in its favor on the ground that there was no substantial evidence to sustain a verdict against it.

The burden was upon the insured to prove: (1) That he was totally disabled by July 1, 1919; and (2) that his dis-

138

ability was then permanent, that is, based upon conditions then existing which made it reasonably certain that the disability would continue throughout his life. This burden was enhanced by reason of the fact that the insured's long and unexplained delay in bringing his action was "strong evidence that he was not totally and permanently disabled before the policy lapsed." Luimbra v. United States, 290 U.S. 551, 560, 561, 54 S.Ct. 272, 276, 78 L.Ed. 492.

■ Since there is in the record before us no competent medical evidence to warrant a finding that the disease with which the insured is now afflicted had by July 1, 1919, reached the incurable stage, it is obvious that there was no substantial evidence to sustain the finding of the jury that the disability was then permanent. It is therefore unnecessary to discuss other questions.

■ Whether the insured had tuberculosis on July 1, 1919, and whether, if he had it, it had then progressed to the incurable stage, were strictly medical questions. United States v. Clapp (C.C.A.2) 63 F.(2d) 793, 795; Aetna Life Ins. Co. of Hartford v. Kelley (C.C.A.8) 70 F.(2d) 589, 593, 93 A.L.R. 471; Mutual Life Ins. Co. of New York v. Still (C.C.A.8) 78 F.(2d) 748, 750; London Guarantee & Accident Co. v. Woelfle (C.C.A.8) 83 F.(2d) 325, 337. ·

The only competent evidence indicating that the insured had pulmonary tuberculosis at all prior to July 1, 1919, is a government report of a physical examination of the insured on September 30, 1919, which contains a diagnosis of chronic pulmonary tuberculosis, and a prognosis of "favorable with treatment." If the word "chronic" be taken to mean that the disease was of more than three months' duration, it would justify the inference that the disease existed on July 1, 1919; and we shall assume, without deciding, that that was the meaning of the word. There is no evidence, however, that the disease had by July 1, 1919, progressed beyond its early or incipient stages. Of the three doctors who testified for the plaintiff, none expressed or attempted to express any opinion either as to the existence of the disease prior to July 1, 1919, or as to the pathological conditions upon which the insured's disability was then based.

■ The nearest approach to an opinion that the insured had tuberculosis on July 1, 1919, which had then reached the incurable stage, was the following testimony given by Dr. McNaughton: "Basing my conclusion upon the examinations I made in 1931 and September of this year [1935], I would say that his condition was permanent July 24, 1919." It seems probable that the doctor meant to say July 1st, instead of July 24th, and we shall so assume. It appears that Dr. McNaughton had examined the insured in August, 1931, and diagnosed the case as active advanced tuberculosis with cavitation; that he had no personal knowledge of the insured's case prior to 1931; that in his judgment the insured's tuberculosis "was not curable although it may be arrested"; and that he was of the opinion that "with proper climate, selected diet, rest, proper treatment in every way * * * the plaintiff's case might have become arrested but not cured." The opinion of Dr. McNaughton that the insured's "condition was permanent" by July 1, 1919—which was without adequate foundation—was not substantial evidence that the insured's disability on July 1, 1919, was based upon pathological conditions then existing which rendered it reasonably certain that he would never recover. United States v. Hill (C.C.A.8) 62 F.(2d) 1022, 1025; United States v. Spaulding, 293 U.S. 498, 506, 55 S.Ct. 273, 276, 79 L.Ed. 617; Svenson v. Mutual Life Ins. Co. of New York (C.C.A.8) 87 F.(2d) 441, 445.

The insured's case was not helped by the evidence introduced by the government. This evidence consisted almost entirely of reports of physical examinations of the insured made by government physicians between September 30, 1919, and March 12, 1935. These reports indicate nothing more than the existence of the disease between those dates, and that it was sometimes active and sometimes arrested, and that prognoses were sometimes favorable and sometimes unfavorable. The last four reports—those of November 27, 1931, December 22, 1932, August 23, 1933, and March 12, 1935—indicate that the insured had at those times an arrested case of tuberculosis.

The evidence of the government also shows that the insured left a government hospital, where he was being treated, on June 10, 1920, contrary to the advice of the ward surgeon; and that he voluntarily left a government hospital in 1921 after he had applied for and had been refused a fur-

lough. According to his own testimony, he has had no hospital treatment since 1923.

The following language from the case of Eggen v. United States (C.C.A.8) 58 F.(2d) 616, 620, is pertinent: "No one could determine from the evidence whether there were, during the life of the policy, conditions not disclosed which then placed the insured in the class of incipient tuberculars who cannot be cured, or whether, subsequent to lapse, such conditions developed during the natural progress of the disease, or because of the failure of the insured to take treatment, or as the combined result of both the disease and such failure."

The government, under the evidence in this case, was entitled to a directed verdict. Eggen v. United States (C.C.A.8) 58 F.(2d) 616; Proechel v. United States (C.C.A.8) 59 F.(2d) 648; United States v. Peters (C.C.A.8) 62 F.(2d) 977, 980; Grate v. United States (C.C.A.8) 72 F.(2d) 1, certiorari denied 294 U.S. 706, 55 S.Ct. 352, 79 L.Ed. 1241; United States v. Cameron (C.C.A.8) 87 F.(2d) 61; United States v. Clapp (C.C.A.2) 63 F.(2d) 793; Nicolay v. United States (C.C.A.10) 51 F.(2d) 170; Hirt v. United States (C.C.A.10) 56 F.(2d) 80; Roberts v. United States (C.C.A.10) 57 F.(2d) 514; United States v. Rentfrow (C.C.A.10) 60 F.(2d) 488; United States v. McShane (C.C.A.10) 70 F.(2d) 991, certiorari denied 293 U.S. 610, 55 S.Ct. 141, 79 L.Ed. 700; Falbo v. United States (C.C.A.9) 64 F.(2d) 948, affirmed per curiam 291 U.S. 646, 54 S.Ct. 456, 78 L.Ed. 1042; United States v. Hammond (C.C.A.5) 87 F.(2d) 226; Robinson v. United States (C.C.A.2) 87 F.(2d) 343.

The judgment is reversed, and the case remanded for further proceedings not inconsistent with this opinion.