## UNITED STATES v. JOHNSON.

### No. 10980.

Circuit Court of Appeals, Eighth Circuit.

Feb. 18, 1938.

540

Clinton R. Barry, U. S. Atty., of Fort Smith, Ark., G. W. Hendricks, Sp. Asst. to U. S. Atty., of Little Rock, Ark., John E. Harris and Duke Frederick, Asst. U. S. Attys., both of Fort Smith, Ark., Julius C. Martin, Director, Bureau of War Risk Litigation of Washington, D. C., Wilbur C. Pickett, Sp. Asst. to Atty. Gen., and Young M. Smith, of Washington, D. C., for appellant.

A. N. Hill, of Charleston, Ark., and E. H. Bost, of Fort Smith, Ark., for appellee.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

This action at law was commenced December 9, 1935, to recover upon a policy of war risk insurance issued to James Johnson, who was in the United States Army from August 23, 1918, to April 3, 1919. He paid no premiums after his discharge from the service, and the policy lapsed on June 1, 1919, for nonpayment of premium. The insured died November.24, 1929. The plaintiff (appellee) in her complaint alleged that prior to its lapse the policy had matured by reason of the total and permanent disability of the insured due to "diabetes, kidney trouble, or kidney diseases, hypertension, high blood pressure, pleurisy, shortness of breath, rapid heart, heart trouble, heart diseases, urine loaded with sugar, rheumatism, nervousness and a weakened and impaired mind and body." This the government denied. The case was tried to a jury, and at the close of the evidence the government moved for a directed verdict. Its motion was denied. The jury returned a verdict for the plaintiff, upon which judgment was entered, and this appeal followed.

The government challenges the sufficiency of the evidence to sustain the verdict.

The burden was upon the plaintiff to prove: (1) That the insured was totally disabled by June 1, 1919, and (2) that his

disability was then permanent, that is, based upon conditions then existing which made it reasonably certain that the total disability would continue throughout his life. This burden was enhanced because the insured at no time prior to his death had made any claim that he was so disabled on June 1, 1919, and the long unexplained delay in making claim for insurance and in bringing this action was "strong evidence that [the insured] was not totally and permanently disabled before the policy lapsed." Lumbra v. United States, 290 U.S. 551, 560, 561, 54 S.Ct. 272, 276, 78 L.Ed. 492; United States v. Rakich, 8 Cir., 90 F.2d 137.

■ The record contains no ° competent medical evidence which would justify a finding that the insured was on June 1, 1919, afflicted with diabetes or that if he was then so afflicted the disease had reached a state where it had become a totally disabling malady which could neither be arrested nor cured. Whether the insured had diabetes on June 1, 1919, and whether, if he had it, it had then become totally disabling and not subject to arrest or cure, were essentially medical questions. United States v. Clapp, 2 Cir., 63 F.2d 793, 795; Aetna Life Ins. Co. of Hartford v. Kelley, 8 Cir., 70 F.2d 589, 593, 93·A.L.R. 471; Mutual Life Ins. Co. of New York v. Still, 8 Cir., 78 F.2d 748, 750; London Guarantee & Accident Co. v. Woelfle, 8 Cir., 83 F.2d 325, 337; United States v. Rakich, 8 Cir., 90 F.2d 137, 138.

Dr. W. H. Bollinger, the only medical witness called by the plaintiff, testified that he had treated the insured, but he expressed no opinion that on June 1, 1919, the insured had diabetes. He testified that he thought that he had seen the insured prior to January 4, 1923, the date of his (the doctor's) first book entry showing a visit to the insured; that he had diagnosed the insured's trouble as diabetes at some time, but that he could not tell on what date; and that he did not know on what date he gave the insured his first treatment. The nearest the doctor came to testifying that he had diagnosed the insured's case as diabetes prior to June 1, 1919, was in his answer to the following question asked by the court: "Q. You may have treated him a week after he came out of the army or may have treated him between that and 1923?" "A. I am inclined to think I had, because I know I made the diagnosis in the office, and this [the entry of January 4, 1923,] is a trip to his house, and I know it must have been before that

that I made the diagnosis of diabetes, but the date I can't tell you." The doctor further testified that diabetes is an incurable disease; that the treatment for it is diet and insulin; that ordinary work does not hurt a person with diabetes under proper treatment; that diabetics can carry on a lifetime if they have proper attention, but, without proper treatment, they are susceptible to other diseases; that the doctor treated the insured once a week and sometimes once a month; that the insured was not able to buy insulin; that he had an immense amount of sugar in his urine the first time the doctor examined him; that at that time he was not able to perform manual labor without treatment; that if the insured had had proper treatment he· might have been able to "follow his ordinary life"; that theoretically he could but theories do not always work in all instances; that an attempt was made to get insulin for the insured through the Red Cross, but none was procured; that, theoretically, if insulin had been administered to the insured "he could have gone on his usual way, but I could not tell what he could have done." On redirect examination by the court, the doctor expressed doubt whether, even with insulin, diabetics can do manual labor. He said: "They manage to live, but they don't manage to do manual labor that I know of. I don't think they can. That would be just my opinion." The doctor was shown a statement bearing his signature, dated February 1, 1928, which read: "First examined patient in June, 1919. Patient then seemed below normal, but did not make positive diagnosis. I re-examined the patient again in 1923, found him suffering from diabetes. Examination of urine showed heavy readings of sugar. Sugar persists until now. Patient unable to procure treatment. Has had occasional dose of insulin, and have tried to diet him. Consider patient in a bad shape at the present."

With reference to this statement, the doctor testified that it was made from memory; that he might have been mistaken; that he did not know when he first found sugar in insured's urine.

The plaintiff endeavored to supply the deficiencies in the doctor's testimony as to the date when he first made a diagnosis of diabetes. She testified that the insured went to see the doctor within a short time after his return from the service, which was on April 4, 1919, and that within two or three weeks from that time the doctor had

announced that the insured had diabetes. A Mr. Armstead, who was a diabetic, testified that, before he had seen the insured after his return from the Army, he, Armstead, had been at Dr. Bollinger's office and had been shown by the doctor a specimen of urine which the doctor said was that of the insured; that when the doctor showed this specimen, he said, "You think you have got diabetes—" Armstead testified that he thought that it was less than a month after the insured's return that he saw the insured, but stated: "That is just pure guesswork with me. I think it was less than thirty days, but it could have been more." The witness, when confronted with a written statement which it was claimed he had given to the government, and which statement contained the following language: "After the complainant's discharge on the 3rd day of April, 1919, I saw him weekly. I first noticed that he was disabled in the spring of 1924"; said: "I don't think I made that certificate. I am not going to say that I didn't make it."

■ The testimony of the plaintiff that within two or three weeks after the return of the insured from the Army Dr. Bollinger had "announced" that the insured had diabetes, and the testimony of Armstead as to the specimen shown him by Dr. Bollinger, was not competent to prove that the insured had diabetes on June 1, 1919, or that Dr. Bollinger had then made a diagnosis of diabetes.

There was evidence that while in the service the insured was reported sick on October 19, 1918, "diagnosis not stated." There was also evidence that, upon his discharge, he claimed no disability, and that none was noted on his discharge papers; that in 1927 he had made an application to the government for compensation, in which he stated that his disability from diabetes began January 1, 1924, and that he had been treated by Dr. W. H. Bollinger for diabetes on April 1, 1924. The evidence of nonexpert witnesses was to the general effect that the insured had been in perfect health at the time he went into the Army; that upon his return from the Army he was not well and could not and did not work regularly; that his wife did most of the work around the farms on which they lived; that the insured unsuccessfully attempted to engage in his prewar occupation as a section hand; that he gradually declined, and finally died of blood poisoning which set in after he had scratched himself on a barbed wire.

The government's only witness was a Dr. Eberle, who testified that insulin, which was discovered about 1922, takes the place of the secretion of the pancreatic glands, which secretion is deficient in diabetics; that the injection of insulin has the same effect as the natural secretion; that the patient is rendered practically normal, and that upon injection of insulin the disease ceases to exist as a disease so long as the patient receives insulin; that the government provides insulin for ex-soldiers suffering from diabetes and furnishes hospital facilities for ex-service men; that diabetes is incurable; that a diabetic given insulin can do manual labor; that he (the doctor) could have obtained insulin for the insured at any time after its discovery in or about 1922.

The plaintiff in rebuttal testified that she had at some unidentified time left a note at Dr. Eberle's office during his absence, with some unidentified person. What the content of the note was is not disclosed, but apparently it called for insulin, which was not obtained.

■ Taking that view of the evidence which is most favorable to the plaintiff, it indicates that on June 1, 1919, the insured was totally disabled and that he may have had diabetes, and that he went without proper treatment from the time he first had the disease until the date of his death. There can be no question that, as an ex-soldier, proper care and treatment were available to him without expense, and there is no basis in the evidence for a conclusion that treatment would not have been effective in his case.

■ The finding of the jury that the insured had diabetes on June 1, 1919, and that the pathological conditions were then such that it was reasonably certain that his disease, under proper treatment, could never be arrested, was based upon speculation and conjecture. Eggen v. United States, 8 Cir., 58 F.2d 616, 620. See also, United States v. Rakich, 8 Cir., 90 F.2d 137, 139, and cases therein cited.

■ Our conclusion is that there was no substantial evidence of total and permanent disability on June 1, 1919, and that the court should have directed a verdict for the government.

The judgment is reversed.